**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | |
|---|---|
| **ALANA SOUZA a/k/a ALANA CAMPOS; ANYA MONZIKOVA FRITTS; EVA PEPAJ; TARA LEIGH PATRICK a/k/a CARMEN ELECTRA; CIELO JEAN 'CJ' GIBSON; TIFFANY TOTH GRAY; KATARINA VAN DERHAM; MARIANA DAVALOS; CORA SKINNER; LUCY PINDER; and BROOKE JOHNSON a/k/a BROOKE TAYLOR,**<br><br>**Plaintiffs**<br><br>**v.**<br><br>**MIRAGE ENTERTAINMENT, INC. d/b/a BOTTOMS UP CORPUS CHRISTI; BTAB HOLDINGS, LLC and BOTTOMS UP BAR AND GRILL OF ODESSA, LLC d/b/a BOTTOMS UP ODESSA**<br><br>**Defendant** | Case No. _____<br><br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

COME NOW Plaintiffs, ALANA SOUZA a/k/a ALANA CAMPOS; ANYA MONZIKOVA FRITTS; EVA PEPAJ; TARA LEIGH PATRICK a/k/a CARMEN ELECTRA; CIELO JEAN 'CJ' GIBSON; TIFFANY TOTH GRAY; KATARINA VAN DERHAM; MARIANA DAVALOS; CORA SKINNER; LUCY PINDER; and BROOKE JOHNSON a/k/a BROOKE TAYLOR, ("Plaintiffs"), by and through their undersigned counsel, and for their Complaint against Defendants MIRAGE ENTERTAINMENT, INC. d/b/a BOTTOMS UP CORPUS CHRISTI; BTAB HOLDINGS, LLC AND BOTTOMS UP BAR AND GRILL OF ODESSA, LLC D/B/A BOTTOMS UP ODESSA ("Defendants" or "Bottoms Up"), respectfully allege as follows:

- 1 -

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation and unauthorized publication of images of Plaintiffs, who are world-renowned professional models, in order to promote its night club, MIRAGE ENTERTAINMENT, INC. d/b/a BOTTOMS UP CORPUS CHRISTI; BTAB HOLDINGS, LLC AND BOTTOMS UP BAR AND GRILL OF ODESSA, LLC D/B/A BOTTOMS UP ODESSA (collectively "Bottoms Up" or "Defendants").

2.      As detailed below, Defendants' unauthorized use of Plaintiffs' images, photos, and likenesses (collectively, "Images") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1)(A) and (B), which prohibits false or misleading use of a person's image for purposes of advertising; b) violation of Plaintiff's right to privacy, which protects a person's right to privacy and publicity; c) defamation, and; d) supplants various common law torts.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote Bottoms Up, via any medium.

## JURISDICTION & VENUE

4.       This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs has stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1)(A) and (B).  This Court also has subject matter jurisdiction the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

5.      As set forth immediately below, Plaintiffs ALANA SOUZA a/k/a ALANA CAMPOS; ANYA MONZIKOVA FRITTS; EVA PEPAJ; TARA LEIGH PATRICK a/k/a

CARMEN ELECTRA; CIELO JEAN 'CJ' GIBSON; TIFFANY TOTH GRAY; KATARINA VAN DERHAM; MARIANA DAVALOS; CORA SKINNER; LUCY PINDER; and BROOKE JOHNSON a/k/a BROOKE TAYLOR are, and at all times relevant to this action have been, professional models.

6.      According to publicly available records, Defendant MIRAGE ENTERTAINMENT, INC. d/b/a BOTTOMS UP CORPUS CHRISTI, is a Texas Corporation operating in Corpus Christi, Nueces County, Texas at 5945 Williams Drive with a mailing address of 2409 Cricket Hollow Street, Corpus Christi, Texas 78414-2505.  It may be served with process by serving its registered agent and President, Doug Meissner, at 5945 Williams Drive Corpus Christi, Texas 78414-2505.

7.      According to publicly available records, Defendant BTAB HOLDINGS, LLC D/B/A BOTTOMS UP ODESSA is a Limited Liability Company operating in Odessa, Ector County, Texas at 4101 E. 52nd Street, Odessa, Texas 79762.  It may be served with process by serving its registered agent. At 3411 Preston Road, Suite C13-186, Frisco, Texas 75034.

8.      According to publicly available records, Defendant BOTTOMS UP BAR AND GRILL OF ODESSA, LLC D/B/A BOTTOMS UP ODESSA is a Limited Liability Company operating in Odessa, Ector County, Texas at 4101 E. 52nd Street, Odessa, Texas 79762.  It may be served with process by serving its registered agent. At 3411 Preston Road, Suite C13-186, Frisco, Texas 75034.

9.      Venue is proper in the United States District Court for the Southern District of Texas Corpus Christi Division because Nueces County is the principal place of business for Defendant MIRAGE ENTERTAINMENT, INC. d/b/a BOTTOMS UP CORPUS CHRISTI.

10.      All parties have minimum contacts with Nueces County, a significant portion of

the alleged causes of action arose and accrued in Nueces County, Texas, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Nueces County.

**PARTIES**

*Plaintiffs*

11.    Plaintiff ALANA SOUZA a/k/a ALANA CAMPOS is an individual residing in the State of California.

12.    Plaintiff ANYA MONZIKOVA FRITTS is an individual residing in the State of California.

13.    Plaintiff EVA PEPAJ is an individual residing in the State of California.

14.    Plaintiff TARA LEIGH PATRICK a/k/a CARMEN ELECTRA is an individual residing in the State of California.

15.    Plaintiff CIELO JEAN 'CJ' GIBSON is an individual residing in the State of California.

16.    Plaintiff TIFFANY TOTH GRAY is an individual residing in the State of California.

17.    Plaintiff KATARINA VAN DERHAM is an individual residing in the State of California.

18.    Plaintiff MARIANA DAVALOS is an individual residing in the Country of Columbia.

19.    Plaintiff CORA SKINNER is an individual residing in the State of Texas.

20.    Plaintiff LUCY PINDER is an individual residing in the Country of England.

21.    Plaintiff BROOKE JOHNSON a/k/a BROOKE TAYLOR is an individual residing

in the State of California.

***Defendants***

22.     According to publicly available records, Defendant MIRAGE ENTERTAINMENT, INC. d/b/a BOTTOMS UP CORPUS CHRISTI, is a Texas Corporation operating in Corpus Christi, Nueces County, Texas at 5945 Williams Drive with a mailing address of 2409 Cricket Hollow Street, Corpus Christi, Texas 78414-2505.  It may be served with process by serving its registered agent and President, Doug Meissner, at 5945 Williams Drive Corpus Christi, Texas 78414-2505

23.     According to publicly available records, Defendant BTAB HOLDINGS, LLC D/B/A BOTTOMS UP ODESSA is a Limited Liability Company operating in Odessa, Ector County, Texas at 4101 E. 52nd Street, Odessa, Texas 79762.  It may be served with process by serving its registered agent. At 3411 Preston Road, Suite C13-186, Frisco, Texas 75034.

24.     According to publicly available records, Defendant BOTTOMS UP BAR AND GRILL OF ODESSA, LLC D/B/A BOTTOMS UP ODESSA is a Limited Liability Company operating in Odessa, Ector County, Texas at 4101 E. 52nd Street, Odessa, Texas 79762.  It may be served with process by serving its registered agent. At 3411 Preston Road, Suite C13-186, Frisco, Texas 75034.

## FACTUAL ALLEGATIONS

25.     As set forth immediately below, Plaintiffs are well-known professional models who earn their livelihood modeling and selling their identity, image and likeness (collectively "Images") to companies, magazines, and individuals for the purpose of advertising, endorsing, or promoting products and services.

26.     Bottoms Up's misappropriated Plaintiffs' images and likenesses and repeatedly published of them in a defamatory manner for the commercial benefit of its night club.  Bottoms

Up's violations are ongoing.

27.     There is no question that Bottoms Up or parties acting on its behalf misappropriated the images and likenesses of the Plaintiffs for the purpose of using the value of the Plaintiffs' Images for the value associated with them.   Plaintiffs are internationally known for gracing the covers of countless mainstream publications in addition to having careers in television and film. All of the Plaintiffs are easily identifiable at a glance.   Moreover, Bottoms Up undoubtedly received a benefit from its unauthorized use of the Plaintiffs' Images.  The Plaintiffs have suffered damages as a result of Bottoms Up's conduct.

28.     ALANA SOUZA a/k/a ALANA CAMPOS, is a Brazilian model who started working at the age of 15. Campos was scouted by the director of Ford Models, which remained her agency for five years. While she was nominated in numerous beauty pageants in her country, she decided to move to the United States at 20 and is currently represented by Wilhelmina Models. Campos has been published in *Playboy*, *Astonish*, *Viva Glam*, and *Bliss* magazines. She has also been in many campaigns such as Arden B, Target, Chynna Dolls, Frederick's of Hollywood, ICollection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, Marisa Kenson, Sports Calendar, and appeared as a spokes model for My Body Journey and as a cover girl for *Arizona Foothills Magazine*. In addition, Campos was featured in the movie "Last Vegas" with Robert DeNiro, Morgan Freeman, and Michael Douglas.

29.     Bottoms Up misappropriated Ms. Campos' Image and placed it on a social media and, for the clubs' "Happy Cinco de Mayo" event.  The image of Ms. Campos was deliberately positioned to imply that she was an entertainer working at the clubs or that she endorsed the clubs and is attached to this Complaint as Exhibit A.  The image was used without the permission of Ms. Campos and is defamatory on its face.  The image was circulated via social media by Bottoms Up.

- 6 -

30.    ANYA MONZIKOVA FRITTS, is a model and actress who started her career when she moved from Florida to Los Angeles. Starting in 2006, she had reoccurring work as briefcase model #19 and later, #10 on NBC's *Deal or No Deal*; she remained in that role until the end of the show in 2009. In 2007, Fritts had the role of 'The Wounded Angel' in the music video for *Amaranth* by Nightwish, a Finnish metal band.  In 2008, Fritts played Jessica Jaynes in *CSI: Crime Scene Investigation* episode "Drop's Out." Her other film and television appearances consist of a role in the television show *Melissa & Joey*, on the FOX show *Bones, Body of Proof, Knight Rider, CSI: Crime Scene Investigation, CSI: Miami, Femme Fatals, In Plain Sight*, *Tropic Thunder, Zombie Apocalypse, Too Little Too Late, Somebody Marry Me, Seeking Dolly Parton, Surrogates, Iron Man 2* to name a few. Fritts was featured in the August 2007 issue of *Stuff* magazine, as well as *Runway* Magazine where she was on the cover along with several other *Deal or No Deal* models. She has appeared in other magazines such as *Maxim, Cosmopolitan, Vogue,* and *People*. Fritts has over 14 thousand followers on Instagram and over 1,000 followers on Facebook.

31.    Bottoms Up misappropriated Ms. Monzikova's Image and placed it on social media posts and in printed advertisements for the clubs' "Saint Patrick's Day" event.  The image of Ms. Monzikova was deliberately positioned to imply that she was an entertainer working at the club or that she endorsed the club and is attached to this Complaint as Exhibit B.  The image was used without the permission of Ms. Monzikova and is defamatory on its face.  The image was circulated via print and via social media on many occasions by Bottoms Up.

32.    EVA PEPAJ, is a professional model and actress who moved to Hollywood to pursue her career in 2004.  Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in films such as The Hand Off, Interior, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign.

33.     Bottoms Up misappropriated Ms. Pepaj's Image and placed it on social media posts and in printed advertisements for the club's "Saint Patrick's Day" and "Sexy Halloween Costume Contest" events. The Image of Ms. Pepaj was deliberately positioned to imply that she was an entertainer working at the club or that she endorsed the club and is attached to this Complaint as Exhibit B.  The Image was used without the permission of Ms. Pepaj and is defamatory on its face. The Image was circulated via print and via social media on many occasions by Bottoms Up.

34.     TARA LEIGH PATRICK a/k/a CARMEN ELECTRA, is an actress, recording artist, author, and entrepreneur. With an impressive body of work that encompasses dance, television, film, comedy, music, and theatre. Electra is one of Hollywood's most versatile personalities. She attended Cincinnati's School for Creative and Performing Arts. After graduating high school in 1991 Electra moved to Los Angeles and caught the eye of Prince, who produced her self-titled album on his Paisley Park record label. Electra ventured into acting with regular roles on *Baywatch* and MTV's *Singled Out.* She has since made the move to the big screen with starring roles in blockbuster hits including *Scary Movie*, *Dirty Love*, *Cheaper by the Dozen 2*, and *Meet the Spartans*. Electra attained the role as the face of MAX Factor following in the famous footsteps of Marilyn Monroe and Jaclyn Smith. In 2006, Electra became a published author with the release of her book, "How to be Sexy." She also formed the dance troupe, The Bombshells, who perform nationwide, and released the fitness DVD series, *Carmen Electra's Aerobic Striptease*. In 2009, Electra appeared on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences during the summer and fall of the year. In 2010, she starred in the film, *Oy Vey, My Son is Gay* and *2-Headed Shark Attack*, alongside Charlie O'Connell, served as a guest judge on *Britain's Got Talent*, and made reoccurring guest appearances on CW's hit show, *90210*. In November of 2012, Electra released her return-to-music single, "I Like it Loud," featuring

Grammy-nominated producer Bill Hamel. The single, which delves into Electra's fun and playful side, marks 20 years since she first burst onto the Hollywood circuit. "I Like It Loud" hit the #25 spot on Billboard's Dance Club Play Chart, the sultry songstress was on fire, turning up the heat for audiences, including *The Wendy Williams Show*, Cyndi Lauper's *Home For The Holidays* charity event, the notorious White Party in Palm Springs, and the Life Ball in Vienna. In June of 2014, Electra released 'Werq', which was followed by the release of the music video. She also released her hottest single yet, 'Around The World'. As a "Thank You" to her global supporters. In November 2015, Electra performed a few of her hits in Russia at the "Favourites of the Moon" festival. During that same month, Electra launched her perfume, "Carmen Electra", with FragranceNet. Electra can most recently be seen as the host of WEtv's new reality docuseries "Ex Isle" which premiered January 8th, 2016. She has over 2.9 million Facebook followers, 1 million Instagram followers, and 364 thousand Twitter followers.

35.     Bottoms Up misappropriated Ms. Electra's Image and placed it on social media posts for the club's "Freaky Friday" and later "Flashback Friday" events.  The Image of Ms. Electra was deliberately positioned to imply that she was an entertainer working at the club or that she endorsed the club and is attached to this Complaint as Exhibit C.  The image was used without the permission of Ms. Electra and is defamatory on its face.  The Image was circulated via print and via social media on many occasions by Bottoms Up.

36.     CIELO JEAN 'CJ' GIBSON, is an American model who enjoys great success in her industry. Gibson was the *Import Tuner* magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including *FHM*, *American Curves*, *Supreme*, *MuscleMag International*, *Muscle & Fitness,* and *Teeze,* Gibson has also modeled for the world's largest PWC Engine Re

manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing.

37.     Bottoms Up misappropriated Ms. Gibson's Image and placed it on a social media and website posts for the club's "Free Thanksgiving Buffet" event.  The image of Ms. Gibson was deliberately positioned to imply that she was an entertainer working at the club or that she endorsed the club and is attached to this Complaint as Exhibit D.  The Image was used without the permission of Ms. Gibson and is defamatory on its face.  The Image was circulated via print and via social media on many occasions by Bottoms Up.

38.     TIFFANY TOTH GRAY, is an extremely successful model that takes great pride in holding the prestigious title of a *Playboy* Playmate. Gray was the *Playboy* "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under *Playboy's* Fresh Faces. Moreover, she has not only been featured in such magazines as *Super Street Bike*, *Import Tuner*, *Sport Truck, Iron Man, Seventeen*, and *Maxim*, but has also posed for various catalogs. Gray currently has over 3.7 million Facebook followers, 1.4 million Instagram followers, and over 305 thousand Twitter followers, and 1.08 thousand YouTube subscribers.

39.     Bottoms Up misappropriated Ms. Gray's Image and placed it on a social media and website posts for the club's "Free Thanksgiving Buffet" events.  The Image of Ms. Gray was deliberately positioned to imply that she was an entertainer working at the club or that she endorsed the club and is attached to this Complaint as Exhibit D.  The Image was used without the permission of Ms. Gray and is defamatory on its face.  The image was circulated via print and via

social media on many occasions by Bottoms Up.

40.    KATARINA VAN DERHAM, is a successful model, actress, philanthropist, and entrepreneur. As a model, Van Derham graced over 60 magazine covers and appeared in over 600 media outlets including the Time Square jumbotron, CNN, FOX, and NBC. She appeared in 17 national and international print and TV commercials and has been voted one of the 100 sexiest women in the world by magazines on 3 different continents. Van Derham made history by being the only St. Pauli Girl spokesmodel who got re-elected. This has not been repeated since. As an actress, she played opposite Bob Saget in the TV show, Entourage and plays one of the lead roles in the upcoming movie, "Unbelievable" alongside Nichelle Nichols, Tim Russ, and Gilbert Gottfried. Currently, Van Derham is working on the movie, "Vendetta Vette". She is also a founder, CEO, and Editor-in-Chief of classic, glamour lifestyle magazine, *VIVA GLAM*. Her well-respected status gets her invited as a judge of model contests and beauty pageants around the globe. She has over 29 thousand Instagram followers, over 16 thousand Twitter followers, and over 20 thousand Facebook followers.

41.    Bottoms Up misappropriated Ms. Van Derham's Image and placed it on a social media posts for the club's "Dollar Night Tuesdays" events.  The Image of Ms. Van Derham was deliberately positioned to imply that she was an entertainer working at the club or that she endorsed the club and is attached to this Complaint as Exhibit E.  The Image was used without the permission of Ms. Van Derham and is defamatory on its face.  The Image was circulated via print and via social media on many occasions by Bottoms Up.

42.    MARIANA DAVALOS, established a modeling career in Colombia as one of the most famous and successful models in all of Latin America by the age of 18. Davalos was the face of Nacar cosmetics and has appeared in Maxim magazine, Imagen magazine, Besame, SOHO TV,

Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori. Davalos is constantly listed in "The top sexiest people in the world" lists and whether solo or teamed up with her twin sister is constantly in demand. Davalos' worldwide identity has continued to grow and her earning capabilities have increased dramatically with her 563,884 Instagram, Twitter, and Facebook followers.

43.     Bottoms Up misappropriated Ms. Davalos' Image and placed it on a social media posts and in printed advertisements for the club's "Monday Night Football" and "Monday Night Old School Sports Night" events. The Image of Ms. Davalos was deliberately positioned to imply that she was an entertainer working at the club or that she endorsed the club and is attached to this Complaint as Exhibit F. The Image was used without the permission of Ms. Davalos and is defamatory on its face. The Image was circulated via print and via social media on many occasions by Bottoms Up.

44.     CORA SKINNER, is a model and actress. Her television show appearances include, The Tonight Show with Jay Leno, Rules of Engagement, QVC, Shark, Las Vegas "White Christmas", and CSI Miami. She has modeled for name brands such as, Sketchers, Nordstrom, Fredricks of Hollywood, Tecate, Skky Vodka, and Muscle & Fitness to name a few. She has even appeared on music videos such as Def Leppard's "Nine Lives".

45.     Bottoms Up misappropriated Ms. Skinner's Image and placed it on a social media posts and in printed advertisements for the club's "Christmas Party" event. The Image of Ms. Skinner was deliberately positioned to imply that she was an entertainer working at the club or that she endorsed the club and is attached to this Complaint as Exhibit G. The Image was used without the permission of Ms. Skinner and is defamatory on its face. The Image was circulated via print

and via social media on many occasions by Bottoms Up.

46.     LUCY PINDER, is, and at all times relevant to this action was, an English model, actress, host, businesswoman, and one of Great Britain's most famous glamour models. Pinder has featured in publications such as *FHM, Nuts, Loaded, The Daily Star,* and hundreds of others. Pinder has appeared on *FHM's* list of the "100 Sexiest Women in the World" in 2005, 2006, and 2007. She was a guest columnist in *Nuts*, entitled "The Truth About Women" and appeared on the final edition of the *Nuts* magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) among others, and on large national and international advertising campaigns. Pinder has an established an acting career with many TV appearances and Film credits. She has appeared on shows such as *I'm Famous and Frightened*, *Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon,* and *Team and Bo!* in the USA. Pinder was also a contestant on *Celebrity Big Brother*. Pinder starred in films such as *The Seventeenth Kind, Age of Kill,* and *Warrior Savitri*. Pinder works closely with a number of Wildlife charities and is involved in fundraising for Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue. Pinder has also worked with *Help for Heroes* appearing in the *Hots Shots* fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Pinder's own annual calendar continues to be one of the bestselling model calendars year after year and enhances Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram, and Twitter.

47.     Bottoms Up misappropriated Ms. Pinder's Image and placed it on a social media posts for the club's "$3.00 Tequila" events.  The Image of Ms. Pinder was deliberately positioned to imply that she was an entertainer working at the club or that she endorsed the club and is attached

to this Complaint as Exhibit H.  The image was used without the permission of Ms. Pinder and is defamatory on its face.  The Image was circulated via social media on many occasions by Bottoms Up.

48.     BROOKE JOHNSON a/k/a BROOKE TAYLOR, is a world-renowned model who has appeared in magazines such as *FHM*, *Maxim*, *Viva Glam*, and *Stuff*. She has also appeared in commercials and billboards such as Fredrick's of Hollywood, Coors Light, and Budweiser. In addition, Taylor has also been featured in countless other catalogs, billboards, television commercials and shows.

49.     Bottoms Up misappropriated Ms. Taylor's Image and placed it on a social media posts for the club's "4th of July Independence Day" event.   The image of Ms. Taylor was deliberately positioned to imply that she was an entertainer working at the club or that she endorsed the club and is attached to this Complaint as Exhibit I.  The Image was used without the permission of Ms. Taylor and is defamatory on its face.  The Image was circulated via social media by Bottoms Up.

50.     None of the Plaintiffs consented to Bottoms Up's use of the images.  The Plaintiffs are all talented, highly successful models who earn substantial amounts of money by promoting and protecting their images and likenesses to various clients and take great pride in their reputation in their industry.  It is common knowledge that any improper or unauthorized use of their images or likenesses will substantially injure their careers.

51.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize earning potential, book modeling contracts, and establish each of their individual brands.   In furtherance of establishing, and maintaining their brands, Plaintiffs are necessarily selective concerning the companies, and brands,

for which they choose to model.

52.     Plaintiffs' Images were misappropriated, by the Defendants in order to make it appear that they worked at, promoted, or endorsed Bottoms Up.

53.     In the case of each and every depiction featuring Plaintiffs' Images, such appearances were false.

54.     Moreover, in each and every case, this misappropriation occurred without any Plaintiffs' knowledge, consent, or authorization and at no point did Plaintiffs ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images has caused Plaintiffs to suffer substantial damages.

55.     That we know of, Plaintiffs were depicted in social media, website, and other Internet posts in order to promote Bottoms Up.  These posts were intentionally designed to make it appear that Plaintiffs are either night working at or members at Bottoms Up, promoted Bottoms Up, or endorsed the club.  The posting of these images was inherently undiscoverable and the evidence was objectively verifiable.  The Discovery Rule applies to all images in this matter.

56.     No Plaintiff has ever been employed at Bottoms Up or any other associated business and has never (and would never) agree to sign away her Image rights to be used in any way that affiliates her with Bottoms Up.

57.     Plaintiffs have never been hired to endorse Bottoms Up, have received no remuneration for Defendants' unauthorized use of their Images, and have suffered, and will continue to suffer, damages as a result of Defendants' use of their Images.

### *Ownership of Images*

58.     All Plaintiffs have reviewed the imagery in question and have positively identified themselves as the models depicted in the doctored internet and social media posts used by

- 15 -

Defendants' club to market and promote the clubs.  As described more specifically for each Plaintiff above, some of the photographs used to create the night club advertisements were taken professionally, and a release was signed at the time of the photo shoot.  However, no Plaintiff ever released her Right to Privacy, Publicity, or the right to any third party to sell her image to any third party not a party to the original release without her permission.  No Plaintiff ever agreed to promote a night club via the imagery taken by Bottoms Up.

59.    Additionally, if any release was signed, it did not give any person rights to use the photographs into perpetuity.  The industry standard varies, but a model rarely, if ever, signs a release of all rights into perpetuity for the use of her image.  Moreover, if a release was signed, it did not include a release of the Plaintiffs' publicity rights and, in fact, several of the releases specifically stated that Plaintiffs retained their right to publicity.  The right to a person's image and likeness is not copyrightable and, therefore, Plaintiffs are not asserting copyright claims.

60.    Moreover, as described more specifically for each Plaintiff above, some of the photographs were taken as "selfies" and are therefore fully owned by the individual Plaintiff or they were taken for personal use in an individual Plaintiff's portfolio in order to allow her to market herself to new clients.  In these cases, no release was signed and no copyright interest was asserted. In these cases, as above, each Plaintiff fully retained her right to publicity and privacy and in no case did any Plaintiff ever agree, nor did any third party hold the right to agree on her behalf, that Defendants could use her image and likeness in order to market, promote, or endorse their night clubs.  Based on these rights, Plaintiffs assert the Causes of Action described below.

### Defendants' Business

61.    Upon information and belief, MIRAGE ENTERTAINMENT, INC. D/B/A BOTTOMS UP CORPUS CHRISTI operates a night club under the name Bottoms Up that

engages in the business of hosting events in a sexually charged environment while alcohol is served.  These events are promoted via websites and social media accounts on a worldwide basis.

62.     Bottoms Up, does this for its own commercial and financial benefit.

63.     Bottoms Up has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that Plaintiffs either worked as entertainers at Bottoms Up, promoted Bottoms Up, or endorsed Bottoms Up.

64.      Bottoms Up used Plaintiffs' Image and created the false impression that they worked at or endorsed Bottoms Up in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

65.     As Bottoms Up was at all times aware, at no point have Plaintiffs ever been affiliated with or employed by Bottoms Up, and at no point have Plaintiffs ever endorsed Bottoms Up.

66.     All of Bottoms Up's activities, including its misappropriation of Plaintiffs' Images, and publication of them, were done without the knowledge or consent of Plaintiffs, and Bottoms Up did not compensate Plaintiffs for its use of their Images.

67.     As such, Plaintiffs have never received any benefit for Bottoms Up's use of their Images.

### Standard Business Practices in the Modeling Industry

68.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

69.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the Image are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

70.     As detailed above, Defendants knowingly, and without the prior consent of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Bottoms Up, by and through the use of internet posts, social media posts, and the creation and distribution of collateral materials such as flyers, posters, and cards.

71.     Defendants showcased Plaintiffs' Images on the Bottoms Up materials in order to create the false impression that Plaintiffs worked at Bottoms Up or endorsed the club.

72.     Defendants did so in order to attract clientele to Bottoms Up, promote Bottoms Up, and thereby generate revenue for Defendants.

73.     Defendants were aware that, by using Plaintiffs' Image, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Bottoms Up.

74.     Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their reputation, character, and current career.  This is especially so insofar as each of Plaintiffs' Images have been associated with a night club, and the implication of Defendants' use

of Plaintiffs' Images is that she works at, is a member of, or endorses the club.

75.     At no point was Plaintiffs ever affiliated with Bottoms Up or Defendants.

76.     Plaintiffs' Images were used without their consent.

77.     At no point were Plaintiffs ever contacted by Defendants, or any representative of any of the Defendants, to request the use of Plaintiffs' Images.

78.     No Defendants ever obtained, either directly or indirectly, permission to use Plaintiffs' Images.

79.     No Defendants ever paid any Plaintiffs for use of their Images on any promotional materials, including the Bottoms Up billboards, social media, Internet, or other promotional materials.

80.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive the Plaintiffs of their right to determine the use their Images.

81.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**<u>FIRST CAUSE OF ACTION</u>**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.:**
**False Endorsement)**

82.      Plaintiffs hereby repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

83.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

84.     Defendants used Plaintiffs' Image, *inter alia*, in order to create the false impression with the public that Plaintiffs either worked at or were members of the Bottoms Up, or endorsed

the business.

85.     This was done to promote and attract clientele to Bottoms Up, and thereby generate revenue for the Defendants.

86.     Thus, this was done in furtherance of Defendants' commercial benefit.

87.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed, Bottoms Up, Defendants nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Bottoms Up.

88.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Bottoms Up.

89.     Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Bottoms Up, and the goods and services provided by Bottoms Up.

90.     Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial, but in all events, not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**SECOND CAUSE OF ACTION**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

91.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Plaintiffs from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

92.     Defendants used Plaintiffs' images, likenesses and/or identities as described herein

without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Bottoms Up, endorsed Defendants' business and activities, and/or consented to or authorized Defendants to use their Images in order to advertise, promote, and market Defendants' business, Bottoms Up, and/or Bottoms Up's events and activities.

93.     Defendants' use of Plaintiffs' images, likenesses and/or identities to advertise, promote and market Defendants' business, Bottoms Up, and/or Bottoms Up's events and activities as described in this Complaint was false and misleading.

94.     Defendants' unauthorized use of Plaintiffs' images, likenesses and/or identities as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or was otherwise affiliated with Bottoms Up, endorsed Defendants' business, Bottoms Up or Bottoms Up's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants business or Bottoms Up's events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

95.     Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Bottoms Up, as to the general quality of attendees and participants of Bottoms Up and in its events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Bottoms Up, endorsed Defendants' business, Bottoms Up or Bottoms Up's events or activities, or consented to or authorized Defendants' usage of their images in order to advertise, promote, and market Defendants' business or Bottoms Up's events and activities.

96.     Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or were otherwise

affiliated with Bottoms Up, endorsed Defendants' business, Bottoms Up or Bottoms Up's events and activities, or consented to or authorized Defendants' usage of their Images in order to advertise, promote, and market Defendants' business or Bottoms Up's events and activities.

97.     Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Bottoms Up, visit Bottoms Up, and participate in events at Bottoms Up and had a material effect and impact on the decision of members and prospective members and participants to join Bottoms Up, visit Bottoms Up and take part in the events at Bottoms Up.

98.     Defendants' advertisements, promotions and marketing of Bottoms Up and events at Bottoms Up occur in and are targeted to interstate commerce.  Specifically, Defendants promotes its business and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally uses the World Wide Web, social media, and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Bottoms Up events.

99.     Defendants' unauthorized use of Plaintiffs' images, likenesses and/or identities as described herein was designed to benefit Defendants' business interests by, among other things, promoting Bottoms Up and its activities and attracting clientele to Bottoms Up.

100.    Defendants knew or should have known that its unauthorized use of Plaintiffs' images, likenesses and/or identities would cause consumer confusion as described in this Complaint.

101.    Defendants' unauthorized use of Plaintiffs' images, likenesses and/or identities as described herein violates 15 U.S.C. §1125(a) and was wrongful.

102.    Defendants' wrongful conduct as described herein was willful.

103.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

104.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

105.    The method and manner in which Defendants used the Images of Plaintiffs further evinces that Defendants were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendants' use of their Images to advertise Defendants' business.

106.    Defendants has caused irreparable harm to Plaintiffs, their reputations and brands by attributing to Plaintiffs the night club lifestyle and activities at Bottoms Up.

107.    Defendants' unauthorized use of Plaintiffs' images, likenesses and/or identities directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

108.     Plaintiffs respectfully request that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### THIRD CAUSE OF ACTION
**(Violation of Texas Right to Privacy)**

109.    Plaintiffs hereby repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

110.    All Plaintiffs have reviewed the imagery in question and have positively identified themselves as the models depicted in the doctored Internet and social media posts used by Defendants to market and promote the Bottoms Up.  As described more specifically for each

Plaintiff above, some of the photographs used to create the night club advertisements were taken professionally and a release was signed at the time of the photo shoot.  However, no Plaintiff ever released her Right to Privacy, Publicity, or the right to any third party to sell her image to any third-party not a party to the original release without her permission, especially a night club.

111.    Moreover, if a release was signed, it did not include a release of the Plaintiffs' publicity rights and, in fact, several of the releases specifically stated that Plaintiffs retained their rights to publicity.  The right to a person's image and likeness is not copyrightable and, therefore, Plaintiffs are not asserting copyright claims.

112.    Moreover, as described more specifically for each Plaintiff above, some of the photographs were taken as "selfies" and are therefore fully owned by the individual Plaintiff or they were taken for personal use in an individual Plaintiff's portfolio in order to allow her to market herself to new clients.  In these cases, no release was signed and no copyright interest was asserted. In these cases, as above, each Plaintiff fully retained her right to publicity and privacy and in no case did any Plaintiff ever agree, nor did any third party hold the right to agree on her behalf, that Defendant could use her image and likeness in order to market, promote, or endorse its night club. Based on these rights, Plaintiffs assert the Causes of Action described below.

113.    As set forth herein, Defendants have violated by invading Plaintiffs' privacy, misappropriating their likenesses, and publishing on the Bottoms Up materials the altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at Bottoms Up, or endorsed the night club.   Defendants misappropriated the Plaintiffs' Images for the value associated with them and for their own benefit.  All of the images misappropriated by Defendant were republished many times in different formats to substantially different audiences on many occasions.  Each publication is a new violation of Plaintiffs' rights.  The appropriation was neither incidental nor

for a newsworthy purpose; rather, the images were misappropriated by Defendant, or third parties acting on their behalf, for their own benefit because of the commercial standing, reputation, and other values associated with the Plaintiffs' Images.

114.    At all relevant times, the Bottoms Up internet, social media, and collateral materials were used by Defendants for advertising and trade purposes.

115.    The Bottoms Up internet, social media, and collateral materials were designed to attract business to Bottoms Up and generate revenue for Defendants.

116.    Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for Bottoms Up.

117.    At no point did any Defendants ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Images on the Bottoms Up internet, social media, and collateral materials were or anywhere else.

118.    Defendants were at all relevant times aware that they never received any Plaintiffs permission or consent to use their Images on any website or social media account, or on any other medium in order to promote Bottoms Up.

119.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

120.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

121.    Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under IRPA, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

122.    In addition, Plaintiffs hereby requests an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

123.    In addition, Plaintiffs hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of her statutory rights to privacy and publicity.

## FOURTH CAUSE OF ACTION
### (Defamation)

124.    Plaintiffs hereby repeat and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

125.    As detailed throughout this Complaint, Defendants has published altered Images of Plaintiffs in order to promote Bottoms Up to the general public and potential clientele.

126.    Defendants' publication of said Image constitutes a representation that Plaintiffs were either employed at Bottoms Up, endorsed Bottoms Up, or that she had some affiliation with Bottoms Up.

127.    None of these representations were true.

128.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were employees of, members of Bottoms Up, or endorsed the night club.

129.    Defendants were at least negligent in publishing Plaintiffs' Images because it knew, or should have known, that Plaintiffs were not employed by Bottoms Up, had no affiliation with Bottoms Up, had not consented to the use of her Image, and had not been compensated for the use of her Image.

130.    In the alternative, Defendants published the Image of Plaintiffs with actual malice because it knew that Plaintiffs were not employed by Bottoms Up, had no affiliation with Bottoms Up, had not consented to the use of her Image, and had not been compensated for the use of her Image.

131.    Despite Defendants' knowledge and awareness of these facts, it nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for itself.

132.    Defendants' publication of Plaintiffs' Images  constitutes defamation under Texas law because said publication falsely accuses Plaintiffs of having acted in a manner – *i.e.*, working for, a member of, and/or endorsing a night club - which would subject each Plaintiffs to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiffs of confidence and friendly intercourse in society.

133.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Texas law because said publication would tend to injure each Plaintiffs in her trade, business, and profession.

134.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was an entertainer and/or promoting a night club, an inference which Defendants' publication of the Image support.

135.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Texas law because, insofar as said publication falsely portrays each of the Plaintiffs as an entertainer, it imputes unchastity to them.

136.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand ($75,000), exclusive of punitive and exemplary damages.

### FIFTH CAUSE OF ACTION
**(Negligence and *Respondeat Superior*)**

137.    Plaintiffs hereby repeat and re-allege each and every allegation set forth in the

preceding paragraphs as if fully set forth herein.

138. Upon information and belief, Defendants were negligent in their failure to promulgate policies and procedures concerning the misappropriation of the Images of Plaintiffs that were used on their websites and social media accounts.

139. Said failure was the proximate cause of the harm Plaintiffs suffered when their Images were published without their authorization.

140. In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Texas law, were not violated.

141. The publication of the Plaintiffs' images was ongoing. Defendants failed to relinquish all right of control, title, and interest in their advertisements. The images of Plaintiffs were published and reutilized on the Defendants' social media and internet accounts for years (and indeed to the present day) after the original publication. In other words, these images were published and re-published by Defendants continually for years and have not been removed as of the filing of this lawsuit.

142. All of these posts contain new comments or hashtags and were reposted on the particular dates in question. The images of Plaintiffs were altered and re-posted with new content. Each re-publication establishes a new statute of limitations for that image.

143. All of the posts contain multiple "Likes," which, by definition, evidence the fact that each time an image was posted or reposted by Defendant, a substantially new audience was exposed to the image. This precludes the application of the Single Publication Rule in that this

case is about multiple publications of Plaintiffs' images and not one use that can simply be accessed by persons visiting the social media cites.

144.    Each new publication of Plaintiffs' images by Defendant constitutes a separate publication.  Each republication is a separate act of negligence that causes a continuing injury to Plaintiffs.  Each publication constitutes a continuous tort.  To date, Defendant continues to maintain the imagery of the Plaintiffs on its social media accounts.  Defendants have engaged and continue to engage in continued injury-producing conduct.

145.    In addition, Defendants had a duty to refrain from appropriating the Image of those with whom it had not contracted and had not paid.

146.    Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

147.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**ATTORNEYS' FEES PURSUANT TO TEX. CIV. PRAC. & REM CODE § 38.001**

148.    Plaintiffs are professional models who earn a living by lending their images to businesses who seek to use those images to sell a product or service.  Those clients bargain with Plaintiffs for the use of the image in exchange for remuneration.

149.    In this case, Defendants, in essence, contracted with the Plaintiffs for the extended use of their images to promote or endorse their businesses.  Plaintiffs have essentially been forced to perform labor for Defendants against their will and the use of their images in Defendants' social media post constitutes services rendered by Plaintiffs to Defendants.

150.    In addition to the other damages sustained by Plaintiffs, Plaintiffs are entitled to recover reasonable attorney's fees, in addition to the amount of their damages and costs pursuant to Tex. Civ. Prac. & Rem. Code § 38.001(1) and § 38.001(2) and seek those amounts in this lawsuit.

**DEMAND FOR JURY TRIAL**

151.    Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), relating to Plaintiffs' first through fifth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: Austin, Texas
      February 2, 2021

Respectfully submitted,
*/s/Dennis C. Postiglione*
Dennis C. Postiglione
State Bar No. 24041711
**The Casas Law Firm, P.C.**
3801 North Capital of Texas Highway,
Suite E240, #445
Austin, Texas 78746
(512) 806-7699 Office
(855) 220-9626 Fax
dennis@talentrights.law
**ATTORNEYS FOR PLAINTIFFS**

- 30 -